## COMSTOCK and others *vs.* WHITE and MOORE.

The plaintiffs and defendants entered into a partnership for the manufacture and sale of a certain medicine, by a written agreement, which provided that the partnership should continue ten years, unless the plaintiffs desired to terminate it sooner; which they were permitted to do, by a notice for that purpose; and that on a dissolution the recipe for making the medicine should be sold at public auction to the highest bidder of the parties. On the 5th of March, 1859, the plaintiffs gave the defendants notice that the firm was dissolved, and that the recipe, trade-mark, &c. would be sold at public auction, by B., an auctioneer, at the Merchants' Exchange, on the 8th of March. On that day the property was sold, and was struck off to the plaintiffs, who bid $100 therefor. One of the defendants was present, but declined bidding, and refused to concur in the sale. *Held* that the partnership agreement contemplated a friendly dissolution, and a sale at auction of the trade-mark, &c. by mutual consent, and that the parties should bid therefor among themselves. But that no authority was given to either party to fix the time or place of sale, or to select an agent to make it; and that the plaintiffs obtained no title under the sale made by their own auctioneer, without the concurrence of the defendants.

*Held also,* that in case either party refused to unite in a friendly sale at auction, it was competent for a court of equity to enforce a performance of that clause in the contract, and compel a sale.

And, the necessary facts being alleged, to enable the court to afford the proper relief by directing a sale of the interests at auction, by a referee appointed by the court for that purpose, the complaint was ordered to be amended by inserting the proper demand for such relief. And in case of the plaintiffs' declining so to amend, leave was given to the defendants to amend their answer by demanding such relief by way of counter-claim.

MOTION to dismiss the complaint. The facts appear in the opinion of the court.

LEONARD, J. The plaintiffs and the defendant White became partners in the manufacture and sale of a certain medicine known as Dr. Morse's Indian Root Pills, in 1855, under a written agreement, providing that the partnership business was limited to the making and vending of those pills, and was to continue ten years, unless the plaintiffs desired to terminate it sooner; which they were permitted to do by a notice for that purpose. On dissolution the recipe for making the pills, the trade-mark, &c. "shall be sold at public auction to the

highest bidder of the parties hereto." The plaintiffs gave the
defendant White written notice that the firm was dissolved, on
the 5th March, 1859, and also notified him that the recipe,
trade-mark, &c., would be sold at public auction by Mr.
Bleecker, an auctioneer, on the 8th day of March, 1859, at
12 o'clock M., at the Merchants' Exchange. On the day men-
tioned the sale was made according to the notification, and the
plaintiffs bid therefor $100, and the interests so sold were
struck off to them, as the highest bidder; the defendant
White being present and invited by the auctioneer to bid, but
wholly declining to do so, and refusing to concur in the sale.
White and Moore have disregarded the claim of the plaintiffs
to be considered sole owners and purchasers, by virtue of said
sale, and have continued to manufacture the same pills, and
use the same trade-mark which was before used by the part-
nership only.

The plaintiffs commence this action claiming to be sole
owners of the trade-mark and recipe, by title derived by them
under the said sale of March 8th, 1859 ; and have obtained an
injunction against the defendants restraining the use of the
said rights, and the plaintiffs demand a decree that the de-
fendants be perpetually restrained. A motion is now made
to dismiss the complaint, among other reasons, on account of
the want of title in the plaintiffs to the trade-mark, &c. de-
rived under the sale of March 8th, 1859.

This objection is well taken, in my opinion. The partner-
ship agreement contemplates a friendly dissolution, and a sale
at auction of the trade-mark, &c. by mutual consent, and that
the parties should bid therefor among themselves. Had the
sale been so made, the purchaser would have acquired a good
title. But no authority is given to either party to the agree-
ment to fix the time or place of sale, or to select an agent to
make it. Should either party, as in the present instance, re-
fuse to unite in a friendly sale at auction, it is competent for
a court of equity to enforce a performance of this clause in the
contract and compel a sale. The clause is not made inopera-

Comstock *v.* White.

tive by the want of consent of some party to join in such sale. One party to this agreement, however, cannot employ an auctioneer to sell the trade-mark, &c. which belongs to him and to others, who dissent from the employment of such auctioneer. The autioneer is the agent of those who employ him to make the sale.

In this case the plaintiffs employ the auctioneer, and are themselves the only bidders; the interests pretended to be sold are struck down to them for $100, but no money was in fact paid. If it had been paid, the plaintiffs would have paid the money to their own agent, the auctioneer, and have received it back from him. Does the auctioneer in such case make a good title to the plaintiffs of the defendants' interest in the trade-mark? The plaintiffs might themselves have acted as auctioneers, and sold to themselves, and executed a bill of sale from themselves as auctioneers to themselves as purchasers, with the same propriety that they can claim that an auctioneer or agent selected by themselves only, can make a good title to them of another's rights or interests. It is simply a sale from or by themselves to themselves, or by their own authority. The complaint cannot be maintained, on the present claim of title in the plaintiffs.

All the necessary facts are alleged, however, to enable the court to afford the proper relief by directing a sale at auction by a referee appointed by the court for that purpose, at which the parties shall be notified to attend, and who only shall be bidders, and that a conveyance of the interests in question be made by such referee to the highest bidder therefor of the parties to the contract. And that the purchaser shall have the exclusive right and benefit of such interests, and that the other party be restrained from any use or interference therewith.

The complaint should be amended by inserting the proper demand for such relief; and if the plaintiffs decline so to amend within ten days, then the defendants may amend their answer by demanding such relief by counter-claim within ten days thereafter

Either party may also demand a settlement of all questions arising under the partnership agreement and business, including an accounting, &c.

Should neither party amend, as directed, the complaint is to be dismissed.

When the pleadings are amended, the trial will proceed before the same judge, to final judgment in the action.

The defendant Moore shows, as the case now stands, no right in any of the matters or interests from the use of which he is now restrained.

These amendments are to be made without prejudice to the injunction order, as no title to the trade-mark, &c. was derived by Moore under the agreement of December 22, 1858, or the proceedings of January 1, 1859.

The referee is to be appointed as soon as the amendments of the pleadings are made, and the sale is to be made within ten days thereafter. The amount realized at the sale is to be paid into court, or secured by the purchaser by bond with two sureties, to be approved by the court; the application of the proceeds of the sale to be made on an adjustment of the equities between the parties.

[NEW YORK SPECIAL TERM, March 22, 1860. *Leonard,* Justice.]